All right, where are we, Ms. Tisa? All right, very good. Now we'll go back to the top of the calendar, and I'll call the case of National Association of the Deaf and Eddie Sierra versus the State of Florida Senate and others. I've had the experience of getting in a cab and asking them to bring me to this address, and they take me to another courthouse and insist that's where I need to be. So I don't know if that's what happened this morning,  Are you all ready to proceed? Good morning. Good morning, Your Honor. May it please the Court. I'm Jonathan Williams here on behalf of the Legislative Defendants. I'll be splitting my time with Chris Baum of the Attorney General's Office, who's representing Florida State and the State of Florida. The 11th Amendment to the United States Constitution  in the federal courts, but the freedom to make decisions but freedom from the burdens of litigation brought by private plaintiffs itself. And the district court's order denying the motion to dismiss violated this right in three ways. First, Title II as applied in this case does not enforce any constitutional guarantee, and therefore it cannot abrogate state sovereign immunity. Second, because the legislature does not receive federal financial assistance, it is not waived its sovereign immunity to Rehabilitation Act claims. And third, the kind of injunctive relief sought against the official capacity defendants in the complaint is not the kind of relief that is permitted under the ex parte Young exception to state sovereign immunity. Mr. Baum is going to primarily address the Title II argument, but I'd like to touch on two key points there. The first point is this. When you have a comprehensive statute like Title II, the specific question that the court needs to address under abrogation is whether there is a sufficient record of state constitutional violations to justify the congressional remedy under the class of cases at issue. And in this case, the class of case at issue is the provision by the government of information about government proceedings to people who do not actually attend those proceedings. And in the congressional record, there was no documentation of any kind of... I know you characterize it that way, but I see it a little bit differently. You're talking about whether the government has the obligation to produce information. The way I see it, the government's already made that choice. They're making this information available to the public, but the question here is, can a person who is hearing disabled access the information that's available to everybody else? And so that's an equal protection argument. And the reason I characterized it as I did  as the case law is developed. One, you can have a classification that is subject to heightened scrutiny, which the Supreme Court made clear in Garrett, disability is not. So the kind of equal protection formulation that you provided, Your Honor, except in very rare circumstances, has not been held to give rise or to permit abrogation under Title II. The only context in which that has been the basis for abrogation in any federal appellate court is in the context of education, which as we point out in our brief has just an extraordinary history of invidious unconstitutional discrimination against the disabled that stretches back decades and decades, and which as this court pointed out in Association for the Disabled has a very strong impact on a disabled person's ability to participate in society. The videos, the online videos of legislative proceedings at issue here lack both of those characteristics. To start with, they're brand new and there's no sense in which there's been a long history of discrimination, be it constitutional or unconstitutional, against disabled people in this context. And the value of the video, again, owing to its very new nature, is not anywhere near the kind of practical significance to an individual that the right to participate in education is. So I think it's easily distinguishable from the education cases, such that there's no basis for using the equal protection formulation that Your Honor has just made as a basis for abrogation in this context. By contrast, for example, the Tenth Circuit in Gutman v. Colsa determined that ordinary rational basis is not a basis for abrogation in the Title II context following the Supreme Court's decision in Garrett that under Title I of the ADA you couldn't have abrogation when there's simply rational basis review here. And since there's actually no relevant history of constitutional violations by the state in this context, then there's no basis for abrogation under Title II. Briefly, with my minute that's remaining, I'd like to touch on the Rehabilitation Act issue and make clear what the state's argument is on that point. The state put in an uncontroverted declaration saying the state has not received any... excuse me, the legislature itself has not received any federal financial assistance for at least 20 years, as long as the legislature's records go back. That declaration is uncontroverted. Under Bouchard Transportation, this Court has made clear that the immunity issue should be resolved at the time it's raised and the case should only be allowed to proceed so far as it's necessary to resolve the immunity issue. And here the district court simply delayed that issue until after an answer and until after Merritt's discovery took place. And under Bouchard, that doesn't give the legislature the right to immunity from suit that the 11th Amendment protects. I have some rebuttal time, so I will... All right, we'll see you again. Thank you. Thank you, Your Honors, and may it please the Court. Christopher Baum on behalf of the FSU defendants. Congress did not validly abrogate sovereign immunity in this context. On the one hand, there is no fundamental right in this case that Congress sought to enforce when it was enacting Title II that is subject to heightened scrutiny in this case. So Congress's authority was at its nadir. On the other hand, Congress's remedy in this context is not congruent or proportional to the harms in this case. So I'd like to begin with a couple of background principles. First, the Supreme Court has never upheld an abrogation where there was no right subject to heightened scrutiny at issue. And in its most recent case, Coleman, the Court invalidated an abrogation even though there was a right that was subject to heightened scrutiny because Congress had not detailed a sufficient pattern of widespread unconstitutional conduct. This Court, as my colleague indicated, has only done so in the context of education. The other principle that's important to remember is that the Court's inquiry is not whether there is any fundamental right at issue in the case. It is whether there is a fundamental right that is subject to heightened scrutiny that Congress was seeking to enforce when it enacted Title II. Now, the Supreme Court has told us what those rights are, and those are the right of access to courts protected by the Due Process Clause and by the Confrontation Clause, which is subject to heightened scrutiny, and the equal protection right at issue here, which, as the Court held in Garrick, is not subject to heightened scrutiny. Therefore, there is no fundamental right that is subject to heightened scrutiny in this case. What about the petitions clause of the Constitution that gives the right to petition the government for redress of grievances? Well, Your Honor, I don't think that that's at issue here because what they're actually asking for is the right to access the text of legislative proceedings. Now, as you indicated earlier, the way that you conceptualize this case is as the right to equal access because this access is already being provided. It is the right to equal access in this case, and that means that that's simply an equal protection claim which is not subject to heightened scrutiny. I mean, I understand the way you characterized my question. It wasn't my argument. But what about the petitions clause? Setting aside the equal protection question, they argued it in their brief, and that seems like if he can't understand what's going on, then how is he going to have the right to petition the government for a redress of a grievance? The Supreme Court has rejected those types of arguments where people have argued that their lack of access to particular information in the government's control denies them some right under the First Amendment because the court has held that the Constitution is not a Freedom of Information Act. And so the right to access government information and public information such as the text of legislative proceedings is not a fundamental right. So you've gone back to the equal protection? That's right, Your Honor, but that's because in Houchin's and in this court's case in Photo USA, the court held that there is no First Amendment right to this public information even when plaintiffs argue that they require that information in order to make sufficiently informed decisions about their elected representatives. And in this case, there's plenty of information that's available on both the Florida Channel's 24-7 feed that is captioned in the massive amounts of text of legislative proceedings that are available on the website and other sources of information. You're over your time. Your Honor, I believe I had six minutes. Oh, I'm sorry. I had you down as two minutes. We're good. Sorry to interrupt you. No problem, Your Honor. So I'd like to also address congruence and proportionality. As my colleague indicated, Congress did not detail any pattern of unconstitutional state action in this context, let alone a widespread pattern that could justify Congress's abrogation in this context. And as the Eighth Circuit held in Klingler, the Title II sweeps far too much constitutional conduct and prohibits far too much constitutional conduct in this context to be constitutional. And the fact that it might prohibit the state's conduct here shows that Congress was seeking not to enforce the Equal Protection Clause but to redefine the scope of the Equal Protection Clause. And there's no need for this Court to create a circuit split with the Eighth Circuit in Klingler. And the only other argument that plaintiffs make with respect to congruence and proportionality is that the affirmative defenses in Title II save the abrogation. But that's not so. And reading Garrett and Lane together shows how. Because in Garrett, the Court invalidated Congress's abrogation in Title I, which contains basically the same affirmative defenses as Title II, because that case involved only the Equal Protection right. Now, in Lane, the Court upheld Congress's abrogation in Title II because that case also involved the right of access to courts under the Due Process Clause and Confrontation Clause. And the Court noted... Clearly, they talked about the pervasive unequal treatment in past... Lane talked about Congress's consideration of the pervasive unequal treatment of people with disabilities when they passed Title II. That's correct, Your Honor. And so, as to the second step of the congruence and proportionality inquiry, this Court has held that Lane satisfied that second step and allows Congress to generally... Congress generally has the authority to enact a prophylactic remedy. But in both Lane and in this Court's decision in FIU, the Court explained that it has to look at the specific context, whether there's a widespread pattern in the specific context of the class of cases at issue. And here, that is access to the text of legislative proceedings. And there is no history of unconstitutional discrimination in that context. Can I ask you a question? As somebody in the judicial branch where we basically react to the cases that are brought, how hard would it be? So, now when my mother calls me on my cell phone and leaves a voice message, I get the transcript of what she says. I mean, it's not perfect, but it's pretty good. I mean, it doesn't seem like it would be that hard to do a transcript. Not that I'm in the position of making policy with the State of Florida, but you have deaf people that want to know what you're doing. Sure, Your Honor. So, the difficulty and cost is not in the record. I would direct... Because we're just at the 12B6 stage. That's correct, Your Honor. But I would direct you to my colleague who has a more firm understanding of the costs and difficulties of providing transcripts and translators at the 12B6 level. I see that my time... We respectfully request that the Court reverse and remand. Thank you. Good morning. May it please the Court, my name is Mary Vargas, and along with Courtney Cunningham and Scott Dinan, I represent the plaintiff at Belize in this case, Eddie Sierra, and the National Association of the Deaf. And we'd like to express our appreciation to the Court for providing captioning for the proceedings this morning so that Mr. Sierra, who's in the courtroom, can have access. This case is about the right of people who are deaf and hard of hearing to participate in the democratic process. And appellants argue that this is an issue, and I'm quoting the legislative defendant's brief here at page 13, of relative unimportance. And I would say that we profoundly disagree with that statement. In providing hearing citizens access to legislative proceedings and denying that same access to people who are deaf and hard of hearing, the appellants strip my clients of a fundamental right to participate in our representative democracy, which requires them to have the ability to have access to what's going on in their government so that they may petition the government, so that they may have an opinion that's informed on what's happening in their democracy. This is, after all, a government of the people, by the people, and for the people, and that means all the people, not just the hearing people. Given the extraordinary history of discrimination against people with disabilities by the states, including by the state that is the defendant in this case, and the importance of the right that's at stake, the district court correctly concluded that there was valid abrogation of the state's sovereign immunity. So, pursuant to Tennessee v. Lane, and this court's holding in Florida International University, the first two parts of the city-of-born test on abrogation have already been conclusively established. There is an enormous history of discrimination on the basis of disability. This was documented in Tennessee v. Lane, which referenced the preamble to the ADA, and I'll quote from that. What it said was, individuals with disabilities have been subject to a history of purposeful and unequal treatment, and relegated to a position of political powerlessness in our society. That is very literally the issue that is presented in this case, access to participate in the democratic process. So, this was precisely the right that the ADA, Title II, was passed to, was enacted to address, and it was a right of great importance. In addition to the history of discrimination, which is pervasive, and I believe the court used the language clear beyond peradventure, the remedy that was established was both congruent and proportional. As we've noted in our brief, there are affirmative defenses that are available, and the access that is provided is not all that difficult. What's needed is the ability to read the proceedings that are available to everybody else. Let me ask you a question. Would I be correct in assuming that one of the rights, or the only right that you're asserting, is the right of a person to petition the government for redress of grievances? Well, I would say that it's somewhat broader than that, Your Honor. In a representative government, there... Does it include that? Does it include that? Yes. But your assertion is it's broader than that, and would you explain that to me? It's broader than that, because without the understanding that hearing citizens have of what's in the access to information that hearing citizens have of what's going on in the government, it limits a person's ability to vote, to participate in... to contact their representative. If they don't have access to the information that other people do on which to form opinions, then they have a restricted ability to do so. Now, the state would say, well, not all hearing people use the access that we provide. That's really not the point, and certainly not something that we would encourage. When there's a citizen who is interested in access to information that the government provides, and they're unable to access that information simply because of their disability, that's the very essence of discrimination. That goes right to the history of discrimination that necessitated passage of Title II of the ADA. It was in the preamble of the ADA, and it's a harm that can be easily redressed. Let me ask you another thing, and the situation's unusual to me. The defendants are saying you're not asserting the right you say you're asserting. They say you're asserting another right. So would you respond to their characterization of what you're doing? Yes, Your Honor. So as I understand the defendants' argument, they describe it as access to government information that's held by the government. So I think of things like corporate business filings, information that's in the government somewhere that somebody might go and try and get. This is really something different. This is legislative proceedings and the like which are put into the public realm and the public sphere for the public to have access to. The defendants obviously feel this information is important or they wouldn't provide it. And we have described this as access to the democratic process. It's really what it is. That's certainly what the court found in the Reininger case in Oklahoma which is actually a very, very similar case. And I would note that since the time of the briefing in that case, there has been final judgment entered in favor of the plaintiffs against the House of Representatives. So that court described the right as access to the democratic process, as did the district court here. It's not cold hard facts held in a government vault that our clients are trying to gain access to. They're trying to gain access to the hearts and minds and debates and information that's debated in the public sphere which they are excluded from purely because of their disability. I'd like to address the issue of Florida International University in this case. And my understanding is the defendants concede that that case would need to be overturned in order for them to prevail here. That case there was not a fundamental right at issue. The court's reasoning in that case as I understand it is that the risk of not having access to public education is that those students would not be able to participate in the democratic process. It was a concern about a significant future harm. In this case, that future harm is today. It's not something we're concerned about happening in the future if somebody doesn't have access to information. They won't be able to participate in the democratic process. These are citizens at the door wanting now to participate in the democratic process. So certainly if that was a concern that justified a finding of valid abrogation with respect to Title II and public education, which is also what the Fourth Circuit found obviously in Constantine, then it would certainly have to be the case here as well where the citizens are actually trying to access the democratic process and are unable to do so. Can I just, while I've got you, what is the answer, when I try to characterize your argument as they're not seeking information that's not public, they just want to have access to the information that's already public, the state says, well, that's just an equal protection argument and it's not a winner. Talk to me about why you think that is a winner. Well, you know, Tennessee versus Lane obviously talked about access to the courts and that's obviously a fundamental right that's critically important and I don't mean to denigrate that in any way. But the rights that are at issue here seem a far easier case to me than was at issue in Tennessee versus Lane. The right to participate in the democratic process is the bedrock to our system. If you don't have access to that, you don't have the ability to participate. And because of the pervasive findings of discrimination by the state that Tennessee versus Lane documented in the court holding, all of those documentations really related to what's at issue here. There were some historical documentation in Tennessee versus Lane relating to obviously the physical access to courtrooms and that's critically important. I don't mean to denigrate that. However, the record that was documented in Tennessee versus Lane went to critical foundational rights, history of discrimination in marriage laws, in voting, in access to public services and all of those were at issue here. We're in a state where the legislature enacted laws setting up farm colonies and in the laws themselves said that these were to take off the burden of having people with epilepsy and people who were feebleminded of the moral burden of having them exist in the state. And so this to me seems like based on the history of the ADA, based on the significant documentation of exactly the kind of discrimination that we're talking about here, this to me seems to be a far easier case than Tennessee versus Lane. Does that answer your question, Your Honor? I think so. Thank you. If the court doesn't have any further questions, I'm happy to turn it back to my brothers on the other side. All right. Thank you. Thank you. Thank you. I'm going to try to yield 30 seconds of this to my colleague. There's a central problem with the plaintiff's Title II abrogation argument in this case and that is that there is no record of unconstitutional discrimination as it relates to the rights that are asserted here. There have been repeated references to the general record of discrimination against the disabled, but if that were enough, then Garrett would have been decided exactly the opposite way. Title I of the ADA has exactly the same history of general disability discrimination underlying it, and yet because there was no fundamental right at issue in Garrett, the Supreme Court determined that Title I was not congruent and proportional there. That's the exact same scenario we have here. There's no documented history of state unconstitutional discrimination that could support abrogation in this context, which I would like to be clear is a different question whether there could be injunctive relief available for a violation of Title II. You agree that it would be available for a violation of Title II? Injunctive relief. Properly framed ex parte young relief would be available for violation of Title II assuming that it is otherwise constitutionally sound. We don't dispute that at this stage of the case, Your Honor. As to the idea the reliance on a, I'm sorry, I'm supposed to yield at this, well, alright, he's giving me my 30 seconds. As to the idea that there's a fundamental right that is implicated here, as a matter of federal constitutional law, there is not a generalized right to participate in the democratic process. Rather, there are specific rights that have the function of enabling that participation. None of those specific rights includes the right to be able to watch from home video proceedings of legislative proceedings. These proceedings are open to the public. There are accommodations made for those who want to attend them. There's no allegation that those videos that issue here, and the videos themselves are as a matter of federal constitutional law, not of federal constitutional significance. So they cannot support abrogation. Thank you. Thank you. So just a couple of quick points. First, with respect to the petitioning the government argument, the Supreme Court expressly held that the right has to be among the rights that Congress was seeking to enforce when it enacted Title II, and that First Amendment right is not among those rights, and therefore that argument just doesn't wash here. And second, with respect to the access to the democratic process and the text of the legislative proceedings here, the United States Senate and House were closed to the public at the founding. The Senate was closed and voted to close off public access in 1859. The House only opened in 1812 and committee hearings not until the 1970s. And so if that right is fundamental, I think that would surprise the Congress itself. Are you arguing that if Lane had involved physical access to a state house, the result would have been different? I'm sorry, if Garrett? I thought Lane had physical access to a courthouse. Are you arguing that if the request from the plaintiff in that case had been for physical access to a state house, it would have been a different result? That may have been a different result, Your Honor, but that's because the court said in Lane that the rights at issue that Congress was seeking to enforce was specifically the Due Process Clause and Confrontation Clause guarantees a right of access to courts, which the Supreme Court has always held is subject to heightened scrutiny. So while Lane may have come out differently, this case is squarely on point with Garrett because it involves only the equal protection right and it involves the same affirmative defenses and doesn't involve access to the courts. Thank you.